Kristen Lake Cardoso (SBN 338762)
**KOPELOWITZ OSTROW P.A.**
1 W Las Olas Blvd, Suite 500
Ft. Lauderdale, FL 33301
Tel: (954) 525-4100
cardoso@kolawyers.com

*Counsel for Plaintiff and the Putative Class*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CAROLINE BRETHELETTE, *individually and on behalf of all others similarly situated,*<br><br>Plaintiff,<br><br>v.<br><br>FIREWORKS.AI, INC.,<br>Defendant. | **Case No.**<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Caroline Brethelette ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Class Action Complaint and alleges the following against Defendant Fireworks.AI, Inc. ("Fireworks" or "Defendant"), based upon personal knowledge with respect to Plaintiff and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters.

## SUMMARY OF THE CASE

1. Plaintiff brings this class action against Defendant for its failure to properly secure the personally identifiable information ("PII") of Plaintiff and Class Members that Defendant obtained, stored, and processed in the course of providing artificial intelligence ("AI") infrastructure services to its business customers, including Uber Technologies, Inc. ("Uber"). Upon information and belief, the PII compromised includes individuals' names, addresses, dates of birth, driver's license numbers and other government-issued identification numbers, and images of driver's licenses.

2. Defendant is an AI inference company headquartered in San Mateo, California, that lets developers and enterprises access, run, and fine-tune open-weight AI models on Defendant's platform.[1] To use that platform, Defendant's customers transmit data, including data containing the PII of their workers and users, into environments that Defendant hosts, controls, and secures.

3. On October 6, 2026, Defendant identified "a security incident involving unauthorized use of internal Fireworks credentials."[2] Upon information and belief, cybercriminals used those compromised internal Fireworks credentials to access customer environments, including Uber's Fireworks environment, and to steal the PII of Plaintiff and Class Members ("Data Breach"). Defendant later disclosed that its investigation had uncovered impacts to customer account and billing information and, for certain accounts, to "secrets, datasets, and incomplete models," and that a second, separate intrusion through a third-party cloud provider on or about October 23–24, 2026 "led to additional customer data impact."[3]

4. Uber has reported that it notified 149,346 individuals that their information was taken in the Data Breach.[4] According to Uber, its own alerting did not detect the intrusion because the criminals used Defendant's internal credentials, so "no alerts were triggered."[5]

5. Defendant knowingly obtained and maintained sensitive PII and had a resulting duty to securely maintain that information in confidence. Defendant failed to comply with industry standards and its legal obligations to protect the information systems and credentials that gave access to that PII. Plaintiff and Class Members would not have permitted their PII to be entrusted to Defendant had they known that Defendant would not use adequate security measures.

6. Plaintiff seeks to remedy these harms individually and on behalf of all other similarly situated individuals whose PII was compromised in the Data Breach. Plaintiff seeks remedies including compensation for time spent responding to the Data Breach and other types of harm, credit

[1] https://techcrunch.com/2026/11/16/uber-confirms-hackers-stole-thousands-of-drivers-license-information-in-data-breach/ (last visited Nov. 17, 2026).
[2] https://fireworks.ai/security/bulletins/october-2026-security-incident (last visited Nov. 17, 2026).
[3] https://fireworks.ai/security/bulletins/october-2026-security-incident-update (last visited Nov. 17, 2026); https://therecord.media/ai-company-fireworks-says-hackers-stole-data-in-oct-attacks (last visited Nov. 17, 2026).
[4] https://techcrunch.com/2026/11/16/uber-confirms-hackers-stole-thousands-of-drivers-license-information-in-data-breach/ (last visited Nov. 17, 2026).
[5] *Id.*

monitoring and identity theft insurance, and injunctive relief, including substantial improvements to Defendant's data security policies and practices and full and accurate disclosure of the nature of the information compromised.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because (a) the aggregate amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs; (b) the action is a class action; (c) there are Class Members, including Plaintiff, a citizen of Michigan, who is diverse from Defendant; and (d) there are more than 100 Class Members.

8. This Court has personal jurisdiction over Defendant because Defendant maintains its principal place of business in this District, regularly conducts business in this District, and the conduct giving rise to Plaintiff's claims, including Defendant's data security decisions and the management of the credentials and systems compromised in the Data Breach, upon information and belief, occurred in this District.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Defendant resides in this District, and pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## PARTIES

10. Plaintiff is a natural person and a resident and citizen of Southgate, Michigan. Plaintiff worked for Uber and, as a condition of that work, was required to provide her PII to Uber. Upon information and belief, Uber transmitted Plaintiff's PII to Defendant, and Defendant stored, maintained, and processed that PII on systems that Defendant controlled. Upon information and belief, Plaintiff's PII was compromised in the Data Breach.

11. Defendant is a Delaware corporation with its principal place of business located at 900 Concar Drive, San Mateo, California 94402.

## FACTUAL ALLEGATIONS

### A. Background on Defendant

12. Defendant provides an AI inference and model-hosting platform that lets developers and businesses access and use open-weight AI models.[6] Defendant has publicly represented that it has more than 10,000 customers.[7]

13. Due to the nature of the services it provides, Defendant acquires, electronically stores, and processes data that its customers send to its platform, including the PII of its customers' workers, users, and consumers. Upon information and belief, Uber transmitted to Defendant images of driver's licenses and text data extracted from those images, including names, addresses, dates of birth, and driver's license numbers.[8]

14. Defendant was therefore required to ensure that PII was not disclosed or disseminated to unauthorized third parties without the express consent of Plaintiff and Class Members. Defendant had a duty to adopt reasonable measures to protect the PII of Plaintiff and Class Members from involuntary disclosure to third parties, including by securing and rotating the internal credentials that granted access to customer environments, limiting access to customer data, encrypting the information, monitoring for unauthorized access, and deleting information that was no longer needed.

15. Upon information and belief, Defendant made promises and representations to its customers, including Uber, that data entrusted to Defendant's platform, including the PII of Plaintiff and Class Members, would be kept safe and confidential, that the privacy of that information would be maintained, and that Defendant would maintain reasonable security for customer environments.

### B. The Data Breach

16. On or about October 9, 2026, Defendant published a security bulletin on its website. As last updated on October 10, 2026, the bulletin stated, in part: "On October 6, Fireworks identified a security incident involving unauthorized use of internal Fireworks credentials. An unauthorized

---

[6] *Id.*

[7] https://www.bloomberg.com/news/articles/2026-11-09/nvidia-backed-fireworks-ai-notifies-customers-of-its-second-hack-in-weeks (last visited Nov. 17, 2026).

[8] https://www.itpro.com/security/data-breaches/thousands-of-drivers-licenses-exposed-in-uber-data-breach (last visited Nov. 17, 2026).

third party accessed environment variables used in evaluation jobs in a limited number of customer accounts. . . ."[9]

17. Defendant has also reported that, on October 23, 2026, a third-party cloud provider that hosted Defendant's research and development machines was attacked, and that, "[o]n October 24, the unauthorized third party used [the provider] to reach Fireworks development machines and then run an unauthorized workload that led to additional customer data impact."[10] Defendant has attributed the attack to a financially motivated cybercriminal group seeking to sell stolen tokens for accessing large language models.[11]

18. Upon information and belief, and as reported based on Uber's notices to state attorneys general, Defendant notified Uber on October 9, 2026, that criminals had stolen Defendant's internal credentials and used them to access Uber's data, and Uber determined on October 13, 2026, that its data had been accessed.[12] Upon information and belief, the compromised credentials were used to access Uber's data on or about October 7, 2026.

19. Upon information and belief, and as reported based on Uber's notice to the Iowa Attorney General, the attackers obtained "images of driver's licenses and extracted text data, including name, address, date of birth, and driver's license number."[13] Uber has reported that it notified 149,346 individuals in total that their information had been taken.[14]

20. Upon information and belief, Uber offered affected individuals credit monitoring and fraud assistance services through Cyberscout, a TransUnion company.[15]

21. Omitted from Defendant's public statements are the details of the root cause of the Data Breach, how Defendant's internal credentials were compromised, why those credentials

---

[9] Fireworks AI, *Fireworks October 2026 security incident*.
[10] Fireworks AI, *Update on October 2026 security incident*.
[11] https://techcrunch.com/2026/11/16/uber-confirms-hackers-stole-thousands-of-drivers-license-information-in-data-breach/ (last visited Nov. 17, 2026).
[12] *Id.*; https://beinsure.com/news/uber-data-breach-exposes-thousands-of-drivers-license-records/ (last visited Nov. 17, 2026).
[13] https://www.itpro.com/security/data-breaches/thousands-of-drivers-licenses-exposed-in-uber-data-breach (last visited Nov. 17, 2026).
[14] https://techcrunch.com/2026/11/16/uber-confirms-hackers-stole-thousands-of-drivers-license-information-in-data-breach/ (last visited Nov. 17, 2026).
[15] https://www.itpro.com/security/data-breaches/thousands-of-drivers-licenses-exposed-in-uber-data-breach (last visited Nov. 17, 2026).

permitted access to customer environments containing PII, why the intrusion went undetected by customer alerting, the full scope of the PII exfiltrated, and the specific remedial measures undertaken to ensure such a breach does not occur again. Indeed, Defendant's initial bulletin stated that Defendant had not detected evidence of unauthorized access to personal information, a statement that, upon information and belief, did not reflect the theft of Plaintiff's and Class Members' PII. These disclosures fail to inform Plaintiff and Class Members of the Data Breach's critical facts.

**C. Defendant's Security Representations and Obligations**

22. Defendant markets its platform to enterprises that entrust it with sensitive data. Defendant publicly represents that "protecting customer data is at the core of our platform," and that it designs "all of our systems, infrastructure, and business processes to ensure customer trust through verifiable security & compliance."[16] Defendant further advertises on its public "Trust Center" that it maintains SOC 2 Type 2, HIPAA, GDPR, ISO 27001:2022, ISO 27701, and ISO/IEC 42001:2023 compliance, along with an "Information Security, Privacy & AI Management System Policy" that it describes as "[a] single program that keeps information secure, respects privacy, and guides responsible AI."[17]

23. Defendant's Privacy Notice, posted on its website and last modified September 16, 2026, defines "personal data" broadly to mean "any data or information that identifies, relates to, describes, is capable of being associated with, or could reasonably be linked, directly or indirectly, with a particular natural person or household."[18] The Privacy Notice touts "Key Privacy Commitments," including that users "[c]ontrol [y]our [d]ata" and that Defendant maintains "Zero Data Retention." In the same Privacy Notice, Defendant acknowledges that it "may function as a service provider for other businesses," as it did for Uber here, and represents that it retains information "for as long as is reasonably necessary for the purposes specified in this Privacy Notice." Defendant also references its "reasonable efforts to protect your information."

---

[16] Fireworks AI, Data Security, https://docs.fireworks.ai/guides/security_compliance/data_security (last visited Nov. 17, 2026).

[17] Fireworks AI, Trust Center, https://trust.fireworks.ai/ (last visited Nov. 17, 2026); Fireworks AI, Trust Center – Resources, https://trust.fireworks.ai/resources (last visited Nov. 17, 2026).

[18] Fireworks AI, Privacy Notice (last modified Sept. 16, 2026), https://fireworks.ai/privacy-policy.

24. Defendant's Terms of Service, which incorporate its Privacy Notice, likewise represent that "[w]e care about the integrity and security of your personal information."[19] Defendant's product documentation further represents that "[a]ll resources stored within Fireworks are encrypted at rest, including . . . [d]atasets," and that "[a]ll data passed through Fireworks is encrypted using industry-standard protocols and methods."[20] And Defendant's Data Processing Addendum with its business customers represents that Defendant has adopted "measures for ensuring accountability, such as implementing data protection and information security policies across the business, recording and reporting Personal Data Breaches, and formally assigning roles and responsibilities for information security and data privacy functions."[21]

25. Despite these representations, Defendant failed to secure the internal credentials that granted access to customer environments, failed to detect their unauthorized use, retained datasets containing Plaintiff's and Class Members' PII, including images of driver's licenses, that were exfiltrated in the Data Breach, and, upon information and belief, failed to maintain the security controls its advertised certifications and policies require.

26. Defendant knew that it was entrusted with highly sensitive PII, including government identification documents. Defendant also knew that the internal credentials it used to administer and access customer environments were high-value targets, because their compromise would give criminals access to customer data across multiple customer accounts at once.

27. California law independently requires any "business that owns, licenses, or maintains personal information about a California resident" to "implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure." Cal. Civ. Code § 1798.81.5(b). That statute expressly reaches personal information that "a business maintains but does not own or license," *id.* § 1798.81.5(a)(2), and defines personal information to include an individual's name in combination with a "[d]river's license number . . . or other unique identification

---

[19] Fireworks AI, Terms of Service § 9.2, https://fireworks.ai/terms-of-service (last visited Nov. 17, 2026).

[20] Fireworks AI, Data security FAQ, https://docs.fireworks.ai/faq/security/infrastructure/data-security (last visited Nov. 17, 2026).

[21] Fireworks AI, Data Processing Addendum, https://fireworks.ai/dpa (last visited Nov. 17, 2026).

number issued on a government document commonly used to verify the identity of a specific individual." *Id.* § 1798.81.5(d)(1)(A)(ii).

**D. The Data Breach Was Preventable**

28. Defendant could have prevented this Data Breach by, among other things, properly securing, limiting, monitoring, and rotating the internal credentials that granted access to customer environments; segregating customer environments so that a single compromised credential could not reach data across multiple customers; encrypting PII at rest; and purging PII that was no longer necessary for the services Defendant provided.

29. To prevent and detect cyber-attacks, Defendant could and should have implemented, as recommended by industry and government guidance, the following measures:

a. Manage the use of privileged accounts based on the principle of least privilege, so that no internal user, service account, or credential is assigned access to customer data unless absolutely needed;

b. Require multi-factor authentication and strong, randomized, short-lived credentials for all internal and administrative access to customer environments;

c. Store secrets and credentials in secured vaults, rotate them regularly, and promptly revoke them upon any indication of compromise;

d. Segment networks and customer environments so that a compromise of one area of Defendant's systems does not provide access to other customers' data;

e. Monitor for anomalous use of internal credentials, unusual data access patterns, and large outbound data transfers, and thoroughly investigate and remediate alerts;

f. Conduct due diligence on, and impose and monitor security requirements for, third-party cloud providers hosting Defendant's machines;

g. Encrypt sensitive data at rest and in transit; and

h. Categorize data based on sensitivity and retain PII, including images of government identification, only as long as necessary.

30. Given that Defendant was storing the sensitive PII of Plaintiff and Class Members, Defendant could and should have implemented all of the above measures to prevent and detect cyberattacks.

31. The occurrence of the Data Breach, including the use of Defendant's own internal credentials to reach customer data without triggering customer alerts and a second intrusion within weeks, indicates that Defendant failed to adequately implement one or more of the above measures, resulting in the Data Breach and the exposure of the PII of individuals, including Plaintiff and Class Members.

**E. Defendant Acquires, Collects, and Stores Individuals' PII**

32. As a condition of working with Uber, Plaintiff and Class Members were required to provide their sensitive and confidential PII, including their driver's license information. Upon information and belief, that PII was transmitted to Defendant so that Defendant could provide services to Uber.

33. Defendant retains and stores this information and derives a substantial economic benefit from the data that its customers entrust to it, including PII. Defendant is paid by its customers to process that data on its platform. But for the processing of such data, including Plaintiff's and Class Members' PII, Defendant would be unable to carry out its regular business operations.

34. By obtaining, collecting, and storing the PII of Plaintiff and Class Members, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for protecting the PII from disclosure.

35. Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their PII and relied on those to whom they entrusted it, and on the vendors with which it was shared, including Defendant, to keep their PII confidential and maintained securely, to use this information for business purposes only, and to make only authorized disclosures of this information.

**F. The Value of PII and the Risk of Identity Theft**

36. Stolen PII is often trafficked on the dark web, where criminals buy and sell it for profit. Government identification data, such as driver's license numbers and images of driver's licenses, is particularly valuable to criminals because it is used to verify identity and cannot easily be changed.

37. Identity thieves can use PII such as that of Plaintiff and Class Members to perpetrate a variety of crimes that harm victims. For instance, identity thieves may commit various types of government fraud such as obtaining a driver's license or identification card in the victim's name but with another's picture, using the victim's information to obtain government benefits, or filing a fraudulent tax return using the victim's information to obtain a fraudulent refund. Images of driver's licenses, combined with names, dates of birth, and addresses, can also be used to pass identity-verification checks, open financial accounts, and create synthetic identities.

38. The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[22] The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person."

39. The United States Government Accountability Office noted in a June 2007 report on data breaches ("GAO Report") that criminals use PII to open financial accounts, receive government benefits, and make purchases and secure credit in a victim's name.[23] The GAO Report further notes that this type of identity fraud is the most harmful because it may take some time for a victim to become aware of the fraud and can adversely impact the victim's credit rating in the meantime.

40. There may be a time lag between when harm occurs and when it is discovered, and also between when PII is stolen and when it is used. According to the GAO:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue

---

[22] 17 C.F.R. § 248.201 (2013).

[23] See Government Accountability Office, *Personal Information: Data Breaches are Frequent, but Evidence of Resulting Identity Theft is Limited; However, the Full Extent is Unknown* (June 2007), https://www.gao.gov/assets/gao-07-737.pdf.

> for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[24]

41. Reimbursing a consumer for a financial loss due to fraud does not make that individual whole again. Identity theft victims must spend numerous hours and their own money repairing the impact to their credit. The Department of Justice's Bureau of Justice Statistics found that identity theft victims "reported spending an average of about 7 hours clearing up the issues" and resolving the consequences of fraud in 2014.[25]

42. Here, the criminals who perpetrated the Data Breach were, by Defendant's own account, financially motivated.[26] The exposure of Plaintiff's and Class Members' PII to these cybercriminals has caused and will continue to cause a substantial risk of future harm, including identity theft, that is continuing and imminent. Indeed, Uber's offer of credit monitoring and fraud assistance to affected individuals reflects the recognized risk of misuse.

**G. Defendant Failed to Comply with FTC Guidelines**

43. According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making. To that end, the FTC has issued numerous guidelines identifying best data security practices that businesses, such as Defendant, should employ to protect against the unlawful exposure of PII.

44. The FTC's publication *Protecting Personal Information: A Guide for Business* establishes that a sound data security plan is built on five key principles: "TAKE STOCK. Know what personal information you have in your files and on your computers"; "SCALE DOWN. Keep only what you need for your business"; "LOCK IT. Protect the information that you keep"; "PITCH IT. Properly dispose of what you no longer need"; and "PLAN AHEAD. Create a plan to respond to security incidents."[27] The guide also directs businesses to follow the "principle of least privilege,"

---

[24] GAO, Report to Congressional Requesters, at 29 (June 2007), http://www.gao.gov/new.items/d07737.pdf.
[25] Victims of Identity Theft, Bureau of Justice Statistics (Sept. 2015), http://www.bjs.gov/content/pub/pdf/vit14.pdf.
[26] https://techcrunch.com/2026/11/16/uber-confirms-hackers-stole-thousands-of-drivers-license-information-in-data-breach/ (last visited Nov. 17, 2026).
[27] Fed. Trade Comm'n, *Protecting Personal Information: A Guide for Business*, https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business.

under which "each employee should have access only to those resources needed to do their particular job."

45. The FTC's *Start with Security: A Guide for Business* distills lessons from FTC enforcement actions, including that businesses should control access to data sensibly, require secure passwords and authentication, store sensitive personal information securely, segment networks and monitor who is trying to get in and out, secure remote access, and make sure service providers implement reasonable security measures.[28] The FTC has also emphasized that effective security breach detection and response are vital to maintaining reasonable security.[29]

46. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect consumer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45.[30] Section 5 declares unlawful "unfair or deceptive acts or practices in or affecting commerce." 15 U.S.C. § 45(a)(1). Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

47. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiff's and Class Members' PII, including its failure to secure the internal credentials used to access customer environments, constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

**H. Defendant Failed to Follow Industry Standards**

48. Experts studying cybersecurity routinely identify technology service providers such as Defendant, which aggregate data from many customers, as being particularly vulnerable to

---

[28] Fed. Trade Comm'n, *Start with Security: A Guide for Business*, https://www.ftc.gov/business-guidance/resources/start-security-guide-business; Fed. Trade Comm'n, *Stick with Security: Make sure your service providers implement reasonable security measures* (Sept. 15, 2017), https://www.ftc.gov/business-guidance/blog/2017/09/stick-security-make-sure-your-service-providers-implement-reasonable-security-measures.

[29] Fed. Trade Comm'n, *Security Beyond Prevention: The Importance of Effective Breach Disclosures* (May 2022), https://www.ftc.gov/policy/advocacy-research/tech-at-ftc/2022/05/security-beyond-prevention-importance-effective-breach-disclosures.

[30] Fed. Trade Comm'n, *2023 Privacy and Data Security Update*, https://www.ftc.gov/system/files/ftc_gov/pdf/2024.03.21-PrivacyandDataSecurityUpdate-508.pdf.

cyberattacks because a single compromise can expose data belonging to many organizations and individuals.

49. Several best practices have been identified that, at a minimum, should be implemented by businesses like Defendant. These industry standards include educating all employees regarding cybersecurity; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption; multi-factor authentication; credential and secrets management; and limiting which employees and systems can access sensitive data.

50. Upon information and belief, Defendant failed to implement industry-standard cybersecurity measures, including failing to meet the minimum standards of the NIST Cybersecurity Framework Version 2.0 (including without limitation PR.AA-01, PR.AA-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR.DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-04), which are established standards in reasonable cybersecurity readiness.

51. These frameworks are applicable and accepted industry standards. By failing to comply with these accepted standards, Defendant opened the door to the criminals, thereby causing the Data Breach.

**I. Plaintiff's Experience**

52. Plaintiff worked for Uber. As a condition of receiving employment, Plaintiff was required to provide her PII to Uber.

53. Upon information and belief, Plaintiff's PII was transmitted to Defendant and stored on Defendant's platform, and was accessed and exfiltrated in the Data Breach.

54. Plaintiff is very careful about sharing her PII. Plaintiff has never knowingly transmitted unencrypted PII over the internet or any other unsecured source. Plaintiff would not have permitted her PII to be entrusted to Defendant had she known of Defendant's inadequate data security practices.

55. As a result of the Data Breach, Plaintiff has spent and will continue to spend time and effort mitigating its consequences, including reviewing her credit reports and financial accounts, and responding to suspicious communications. This time has been lost forever and cannot be recaptured.

56. Plaintiff has suffered anxiety, stress, and concern about the theft of her government identification data and the risk that it will be used to commit identity theft and fraud. Plaintiff has also suffered injury in the form of the loss of privacy and confidentiality of her PII, the diminished value of her PII, and the imminent and substantial risk of fraud and identity theft, which risk is heightened because her driver's license information cannot readily be changed.

57. Plaintiff has a continuing interest in ensuring that her PII, which, upon information and belief, remains in Defendant's possession, is protected and safeguarded from future breaches.

**J. Plaintiff and Class Members Suffered Damages**

58. As a direct and proximate result of Defendant's wrongful actions and inaction and the resulting Data Breach, Plaintiff and Class Members have been placed at an imminent, immediate, and continuing increased risk of harm from identity theft and identity fraud, requiring them to take time which they otherwise would have dedicated to other life demands, such as work and family, to mitigate both the actual and potential impact of the Data Breach on their lives. Such mitigatory actions include, inter alia, placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closely reviewing and monitoring their credit reports and accounts for unauthorized activity, and sorting through phishing and spam email, text, and phone communications.

59. Defendant's wrongful actions and inaction directly and proximately caused the theft and dissemination of Plaintiff's and Class Members' PII to criminals, causing them to suffer, and continue to suffer, economic damages and other actual harm for which they are entitled to compensation, including:

a. theft of their PII, including government identification data;

b. the imminent and certainly impending injury flowing from potential fraud and identity theft posed by their PII being placed in the hands of criminals and misused via the sale of their information on the Internet's black market;

c. the untimely and inadequate notification of the Data Breach;

d. the improper disclosure of their PII;

e. loss of privacy and confidentiality;

f. ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach;

g. ascertainable losses in the form of deprivation of the value of their PII, for which there is a well-established national and international market;

h. the loss of productivity and value of their time spent to address, attempt to ameliorate, mitigate, and deal with the actual and future consequences of the Data Breach, and the inconvenience, nuisance, and annoyance of dealing with all such issues;

i. emotional distress; and

j. nominal damages.

60. While Plaintiff's and Class Members' PII has been stolen, Defendant, upon information and belief, continues to hold Plaintiff's and Class Members' PII. Particularly because Defendant has demonstrated an inability to prevent a breach, having suffered a second intrusion within weeks of the first, Plaintiff and Class Members have an undeniable interest in ensuring that their PII is secure, remains secure, is properly and promptly destroyed, and is not subject to further theft.

## CLASS ALLEGATIONS

61. Plaintiff brings this class action individually on behalf of herself and all members of the following Class of similarly situated persons pursuant to Federal Rule of Civil Procedure 23. Plaintiff seeks certification under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3), and, in the alternative, (c)(4), of the following Class:

> **Nationwide Class:** All persons residing in the United States whose PII was compromised in the Data Breach (the "Class").

62. Excluded from the Class are Defendant and its affiliates, parents, subsidiaries, officers, agents, and directors, any entities in which Defendant has a controlling interest, as well as the judge(s) presiding over this matter and the clerks, judicial staff, and immediate family members of said judge(s).

63. Plaintiff reserves the right to modify or amend the foregoing Class definition, including by proposing subclasses, before the Court determines whether certification is appropriate.

64. **Numerosity:** The members of the Class are so numerous that joinder of all Class Members in a single proceeding would be impracticable. Upon information and belief, approximately 149,346 individuals were notified that their information was taken in the Data Breach.

65. **Commonality and Predominance:** Common questions of law and fact exist as to all Class Members and predominate over any potential questions affecting only individual Class Members. These common questions of law or fact include, *inter alia*:

a. Whether Defendant engaged in the conduct alleged herein;

b. Whether Defendant had a duty to implement and maintain reasonable security procedures and practices to protect and secure Plaintiff's and Class Members' PII from unauthorized access and disclosure;

c. Whether Defendant failed to adequately secure, monitor, and rotate the internal credentials used in the Data Breach;

d. Whether Defendant's computer systems and data security practices used to protect Plaintiff's and Class Members' PII violated the FTCA and/or state laws, and/or Defendant's other duties discussed herein;

e. Whether Defendant failed to adequately respond to the Data Breach, including failing to investigate it diligently and to disclose its scope accurately and without unreasonable delay;

f. Whether Defendant's data security systems prior to and during the Data Breach were consistent with industry standards;

g. Whether Defendant failed to exercise reasonable care to secure and safeguard Plaintiff's and Class Members' PII;

h. Whether Defendant's actions and inactions alleged herein were negligent and/or constituted negligence *per se*;

i. Whether Defendant breached implied contracts to protect Plaintiff's and Class Members' PII;

j. Whether Defendant was unjustly enriched by its conduct as alleged herein;

k. Whether Plaintiff and Class Members suffered injury as a proximate result of Defendant's conduct;

l. Whether Plaintiff and Class Members are entitled to credit or identity monitoring and monetary relief; and

m. Whether Plaintiff and Class Members are entitled to equitable relief, including injunctive relief, declaratory relief, restitution, and/or disgorgement.

66. Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff on behalf of herself and all other Class Members. Individual questions, if any, pale in comparison, in both quantity and quality, to the numerous common questions that dominate this action.

67. **Typicality:** Plaintiff's claims are typical of the claims of the Class. Plaintiff, like all proposed members of the Class, had her PII compromised in the Data Breach. Plaintiff and Class Members were injured by the same wrongful acts, practices, and omissions committed by Defendant, as described herein. Plaintiff's claims therefore arise from the same practices or course of conduct that give rise to the claims of all Class Members.

68. **Adequacy:** Plaintiff will fairly and adequately protect the interests of the Class Members. Plaintiff is an adequate representative of the Class and has no interests adverse to, or in conflict with, the Class she seeks to represent. Plaintiff has retained counsel with substantial experience and success in the prosecution of complex consumer protection and data breach class actions of this nature.

69. **Superiority:** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages and other financial detriment suffered by Plaintiff and all other Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for Class Members to individually seek redress for Defendant's wrongful conduct. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management

difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

70. **Injunctive and Declaratory Relief:** Defendant has acted and/or refused to act on grounds generally applicable to the Class such that final injunctive relief and/or corresponding declaratory relief is appropriate as to the Class as a whole under Rule 23(b)(2).

71. Likewise, particular issues are appropriate for certification under Rule 23(c)(4) because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such issues include, but are not limited to: (a) whether Defendant owed a legal duty to Plaintiff and Class Members to exercise due care in collecting, storing, and safeguarding their PII; (b) whether Defendant failed to adequately secure the internal credentials used in the Data Breach and to monitor and audit its data security systems; and (c) whether Defendant failed to take reasonable steps to safeguard the PII of Plaintiff and Class Members.

72. All members of the proposed Class are readily ascertainable. Upon information and belief, Defendant and/or its customers have access to the names and addresses of Class Members affected by the Data Breach.

**COUNT I**
**NEGLIGENCE**
(On Behalf of Plaintiff and the Nationwide Class)

73. Plaintiff restates and realleges paragraphs 1 through 72 above as if fully set forth herein.

74. Defendant knowingly collected, came into possession of, and maintained Plaintiff's and Class Members' PII, and had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties. That duty included, among other things, designing, maintaining, and testing Defendant's security protocols, including its credential and access-management controls, to ensure that Plaintiff's and Class Members' PII in Defendant's possession was adequately secured and protected and was not accessible to criminals without authorization.

75. Defendant's duty arose independently of any contract with Plaintiff and Class Members, including from the foreseeability of harm to the individuals whose PII Defendant maintained, the sensitivity of that PII, Defendant's exclusive control over its credentials and systems, the policy of preventing future harm, and statutory standards including Section 5 of the FTCA and Cal. Civ. Code § 1798.81.5(b).

76. Defendant knew or reasonably should have known that a failure to exercise due care in collecting, storing, and using Plaintiff's and Class Members' PII involved an unreasonable risk of harm to Plaintiff and Class Members.

77. A breach of security, unauthorized access, and resulting injury to Plaintiff and Class Members was reasonably foreseeable, particularly in light of the high value of government identification data and of credentials that grant access to AI platforms and customer environments, and the prevalence of data breaches in today's digital landscape.

78. Plaintiff and Class Members were the foreseeable and probable victims of any inadequate security practices and procedures. Plaintiff and Class Members had no ability to protect their PII that was in Defendant's possession, and Defendant was in a position to protect against the harm suffered by Plaintiff and Class Members as a result of the Data Breach.

79. Defendant had, and continues to have, a duty to timely and accurately disclose that Plaintiff's and Class Members' PII within its possession was compromised and precisely the type(s) of information that were compromised.

80. Defendant, through its actions and/or omissions, unlawfully breached its duties to Plaintiff and Class Members by, among other things: (a) failing to secure, limit, monitor, and rotate the internal credentials that permitted access to customer environments containing PII; (b) failing to segment customer environments; (c) failing to detect the unauthorized use of its credentials and the exfiltration of PII; (d) failing to adequately secure its relationship with the third-party cloud provider that hosted its machines; (e) retaining PII longer than necessary; and (f) failing to timely and accurately disclose the Data Breach and the PII compromised.

81. But for Defendant's breaches of its duties, Plaintiff's and Class Members' PII would not have been compromised. There is a close causal connection between Defendant's failure to

implement security measures to protect Plaintiff's and Class Members' PII and the harm suffered, or risk of imminent harm suffered, by Plaintiff and Class Members.

82. As a direct and proximate result of Defendant's negligence, Plaintiff and Class Members have suffered and will continue to suffer the injuries and damages described herein, including lost time, out-of-pocket mitigation costs, loss of privacy, diminished value of their PII, emotional distress, and the imminent and substantial risk of identity theft and fraud.

83. Plaintiff seeks the award of actual and nominal damages on behalf of herself and the Class, and injunctive relief on behalf of the Class in the form of an order (1) compelling Defendant to institute appropriate data security and safeguarding methods and policies with regard to PII; and (2) compelling Defendant to provide detailed and specific disclosure of what types of PII have been compromised as a result of the Data Breach.

**COUNT II**
**NEGLIGENCE *PER SE***
(On Behalf of Plaintiff and the Nationwide Class)

84. Plaintiff restates and realleges paragraphs 1 through 72 above as if fully set forth herein.

85. Section 5 of the FTCA, 15 U.S.C. § 45(a)(1), prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the failure to use reasonable measures to protect PII. Defendant was required by Section 5 to maintain adequate and reasonable data and cybersecurity measures to protect the security and privacy of Plaintiff's and Class Members' PII.

86. In addition, as to Class Members who are California residents, Cal. Civ. Code § 1798.81.5(b) required Defendant, as a business that maintains personal information about California residents, to implement and maintain reasonable security procedures and practices appropriate to the nature of the information.

87. Defendant violated these statutes by failing to employ reasonable, industry-standard data and cybersecurity measures, including, but not limited to, proper credential management, access

controls, segregation of customer environments, encryption, intrusion detection, vendor oversight, and secure destruction of unnecessary data.

88. Defendant's violations of Section 5 of the FTCA and Cal. Civ. Code § 1798.81.5 constitute negligence *per se*, including pursuant to Cal. Evid. Code § 669, which provides that the failure to exercise due care is presumed where a defendant violates a statute and the other statutory elements are met.

89. Plaintiff and Class Members are within the class of persons that Section 5 of the FTCA and Cal. Civ. Code § 1798.81.5 were intended to protect, and the harm that occurred as a result of the Data Breach is the type of harm those statutes were intended to guard against.

90. It was reasonably foreseeable that the failure to reasonably protect and secure Plaintiff's and Class Members' PII in compliance with applicable laws would result in an unauthorized third party gaining access to Defendant's systems and the PII stored on them.

91. As a direct and proximate result of Defendant's negligence *per se*, Plaintiff and Class Members have suffered and will continue to suffer the injuries and damages described herein, and they seek damages and other relief as a result.

## <u>COUNT III</u>
## BREACH OF IMPLIED CONTRACT
(On Behalf of Plaintiff and the Nationwide Class)

92. Plaintiff restates and realleges paragraphs 1 through 72 above as if fully set forth herein.

93. Plaintiff and Class Members provided their PII as a condition of working with or obtaining services from Defendant's customers, including Uber, with the understanding that their PII would be shared only with vendors that agreed to protect it. Upon information and belief, Defendant knowingly accepted possession of Plaintiff's and Class Members' PII for the purpose of providing services that would benefit, among others, the individuals to whom that PII related.

94. By accepting and maintaining Plaintiff's and Class Members' PII, Defendant entered into implied contracts with Plaintiff and Class Members, implied from the parties' conduct and the circumstances, under which Defendant agreed to take reasonable steps to protect that PII, to comply

with its statutory and common law duties to protect that PII, to use it only for authorized business purposes, and to timely and accurately notify them in the event of a data breach.

95. Plaintiff and Class Members reasonably believed and expected that Defendant's data security practices complied with its statutory and common law duties to adequately protect their PII. Defendant's implied promise to safeguard PII is evidenced by, e.g., its representations in its Privacy Notice, Terms of Service, Data Processing Addendum, product documentation, and Trust Center regarding the security and confidentiality of customer data, as set forth above.

96. Plaintiff and Class Members would not have permitted their PII to be entrusted to Defendant had they known that Defendant would not safeguard their PII, as promised, or provide timely and accurate notice of a data breach.

97. Plaintiff and Class Members fully performed their obligations under the implied contracts, including by providing their PII.

98. Defendant breached its implied contracts with Plaintiff and Class Members by failing to safeguard Plaintiff's and Class Members' PII and by failing to provide timely and accurate notice of the Data Breach.

99. The losses and damages Plaintiff and Class Members sustained include, but are not limited to:

a. theft of their PII;

b. costs associated with purchasing credit monitoring and identity theft protection services;

c. costs associated with the detection and prevention of identity theft and unauthorized use of their PII;

d. costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the actual and future consequences of the Data Breach;

e. the imminent and certainly impending injury flowing from the increased risk of potential fraud and identity theft posed by their PII being placed in the hands of criminals;

f. damages to and diminution in value of their PII entrusted, directly or indirectly, to Defendant with the mutual understanding that Defendant would safeguard that data against theft;

g. continued risk of exposure of their PII, which remains in Defendant's possession and is subject to further breaches so long as Defendant fails to undertake appropriate and adequate measures to protect it; and

h. loss of the benefit of the bargain.

100. As a direct and proximate result of Defendant's breaches of implied contract, Plaintiff and Class Members are entitled to damages, including compensatory and/or nominal damages, in an amount to be proven at trial.

**COUNT IV**
**UNJUST ENRICHMENT**
(On Behalf of Plaintiff and the Nationwide Class)

101. Plaintiff restates and realleges paragraphs 1 through 72 above as if fully set forth herein.

102. Plaintiff alleges this claim in the alternative to her breach of implied contract claim.

103. Plaintiff and Class Members have an interest, both equitable and legal, in their PII that was conferred upon, collected by, and maintained by Defendant and that was stolen in the Data Breach.

104. Defendant benefitted from the conferral upon it of Plaintiff's and Class Members' PII, and from its ability to retain and process that information, because Defendant's customers, including Uber, paid Defendant to process data containing that PII. Defendant understood that it so benefitted.

105. Defendant also understood and appreciated that Plaintiff's and Class Members' PII was private and confidential and that its value depended upon Defendant maintaining its privacy and confidentiality. Upon information and belief, a portion of the payments Defendant received was intended to fund, and should have been used for, reasonable data security.

106. Instead of providing a reasonable level of security that would have prevented the Data Breach, Defendant, upon information and belief, calculated to avoid its data security obligations at the expense of Plaintiff and Class Members by utilizing cheaper, ineffective security measures.

Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Defendant's failure to provide the requisite security.

107. Under principles of equity and good conscience, it is inequitable for Defendant to be permitted to retain the benefits it received, and is still receiving, from the use of Plaintiff's and Class Members' PII while failing to secure it. The benefit conferred upon, received, and enjoyed by Defendant was not conferred officiously or gratuitously, and it would be inequitable and unjust for Defendant to retain the benefit.

108. Plaintiff and Class Members have no adequate remedy at law for this Count to the extent their legal claims fail or provide incomplete relief.

109. Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, proceeds that it unjustly received as a result of the conduct alleged herein, and to make restitution to Plaintiff and Class Members.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that the Court enter judgment in Plaintiff's favor and against Defendant as follows:

A. Certifying the Class as requested herein, designating Plaintiff as Class representative, and appointing Plaintiff's counsel as Class Counsel;

B. Awarding Plaintiff and the Class appropriate monetary relief, including actual damages, nominal damages, restitution, and disgorgement;

C. Awarding Plaintiff and the Class equitable, injunctive, and declaratory relief, as may be appropriate, including an order (i) declaring that Defendant's existing security measures do not comply with its duties of care; (ii) requiring Defendant to engage third-party security auditors to conduct periodic penetration testing and audits and to promptly correct any problems detected; (iii) requiring Defendant to implement and maintain reasonable credential-management, access-control, segmentation, and monitoring practices; (iv) requiring Defendant to purge, delete, and destroy in a reasonably secure manner PII not necessary for its provision of services; (v) requiring

Defendant to disclose with specificity to Class Members the types of PII compromised; and (vi) requiring Defendant to provide or extend credit monitoring and identity theft protection services;

D. Awarding Plaintiff and the Class pre-judgment and post-judgment interest to the maximum extent allowable;

E. Awarding Plaintiff and the Class reasonable attorneys' fees, costs, and expenses, as allowable; and

F. Awarding Plaintiff and the Class such other and further relief as the Court deems just and proper.

**JURY TRIAL DEMAND**

Plaintiff demands a trial by jury of all claims herein so triable.

Dated: November 18, 2026

Respectfully submitted,

*_/s/ Kristen Lake Cardoso_*
Kristen Lake Cardoso (SBN 338762)
**KOPELOWITZ OSTROW P.A.**
One W Las Olas Blvd, Suite 500
Ft. Lauderdale, FL 33301
Tel: (954) 525-4100
cardoso@kolawyers.com

*Counsel for Plaintiff and the Proposed Class*